**Justin D. Leonard, OSB #033736**
jleonard@balljanik.com
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, OR 97204
Telephone: (503) 228-2525
Facsimile: (503) 298-1058

Attorneys for Trustee Amy Mitchell

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| In re<br><br>**CGF LLC**, dba **Cascade Garden Farms** and fdba **GEM Tumalo, LLC**,<br><br>Debtor. | Case No. 11-30477-tmb7 |
| **Amy Mitchell**, Trustee,<br><br>Plaintiff,<br>v.<br><br>**Patrick M. Gisler**, an individual, **Pierce Wealth Partners Funds #1, LLC**, a Colorado limited liability company, and **Eric D. Cole**, **Kathryn L. Cole**, and **Reece E. Madison**, individuals,<br><br>Defendants. | Adv. No. 11-03056-tmb<br><br>**COMPLAINT** |

Plaintiff Amy Mitchell (the "Trustee") respectfully states and alleges:

## NATURE OF ACTION

1. This is an action brought by the Trustee to avoid unperfected interests in estate property arising under a security agreement and a judgment, and to seek turnover and recovery of estate property from certain defendants, a preliminary injunction to enjoin further disposition of and harm to estate property by all defendants, and sanctions against the defendants for their respective willful and repeated violations of the automatic stay.

## JURISDICTION

2. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. Venue is proper pursuant to 28 U.S.C. § 1409.

3. This adversary proceeding relates to the chapter 7 bankruptcy case of *In re CGF LLC*, Case No. 11-30477-tmb7, pending in the United States Bankruptcy Court for the District of Oregon, Portland Division (the "Case"). The Case was filed on January 21, 2011 (the "Petition Date").

4. The matter in controversy arises under 11 U.S.C. §§ 105, 541, 542, 544, and 550, and the Fed. R. Bankr. P. 7001 and 7065. It is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), and (O).

## THE PARTIES

5. The Trustee Amy Mitchell is the bankruptcy trustee appointed by the Court to administer the Debtor's bankruptcy estate for the benefit of the Debtor's creditors.

6. The Debtor is also known as GEM Tumalo, LLC and Cascade Garden Farms.

7. The defendant Patrick M. Gisler ("Gisler") is an individual and a bankruptcy debtor in pending case *In re Patrick M. Gisler,* D. Or. Bkcy. Case No. 10-33202-elp7 (filed as chapter 11 case on January 11, 2010; converted on June 30, 2010) (the "Gisler Case"). Michael B. Batlan is the chapter 7 trustee of Mr. Gisler's bankruptcy estate (the "Gisler Estate"). Gisler's address on his bankruptcy petition is 1345 NW Wall St., Suite 100, Bend, OR 97701, which is also the address for Gisler Management Inc. Gisler updated his expired driver license address with the Oregon Department of Motor Vehicles on January 7, 2011 to 3242 Ludlow Avenue, Las Vegas, NV 89121. As described below, Gisler recently listed his current address on court documents as PO Box 7, Bend, OR 97701.

8. The defendant Pierce Wealth Partners Funds #1, LLC ("PWPF") is a limited liability company that was formed on May 24, 2010 in Colorado (Colorado entity ID no. 20101297635). According to the Colorado Secretary of State's corporate records, PWPF's

principal mailing address is 1450 Sproul Ave, Napa, CA 94559, and its principal street address is 10001 E. Evans Ave., #50A, Denver, CO 80247. PWPF's registered agent, Jennifer Combs, is listed with that same address. Upon information and belief, the principal of PWPF is Stephan Piscano, who is Gisler's stepson.

9. The defendants Eric Darrion Cole, Kathryn Leigh Cole, and Reece E. Madison are individuals related to Gisler who together purchased the Real Property, as defined below. Eric Darrion Cole and Kathryn Leigh Cole (the "Coles") are Gisler's son-in-law and daughter, and Reece E. Madison ("Madison") is Gisler's wife.

10. According to the Deschutes County Assessor, the Coles currently own real property at 21125 Scottsdale Dr., Bend, OR 97701, which was transferred to them from Gisler on December 21, 2000.

11. According to the State of Oregon real estate license records, Madison holds a principal broker license (no. 950600190), which was issued on October 16, 2006. According to her license records, Madison's address is 64095 Tamoli Lane, PO Box 7, Bend, OR 97701.

## BACKGROUND FACTS[1]

12. Prior to filing bankruptcy, the Debtor, as tenant, signed a Lease Option Agreement with Gisler (as landlord) dated October 7, 2005 (the "Lease Option") regarding the real property at 19555 Pinehurst Road, Bend, Oregon (the "Real Property"). To secure the Lease Option, the Debtor signed a Security Agreement dated November 7, 2005 (the "Security Agreement"). Gisler was granted a blanket security interest in the Debtor's property (which primarily consists of landscaping equipment and nursery stock), in addition to specific items of equipment listed on Exhibit A of the Security Agreement (together, the "Collateral").

13. Gisler filed a UCC-1 Financing Statement on December 22, 2005 (the "UCC-1").

---

[1] The facts alleged herein mirror the Declaration of Amy Mitchell in Support of Trustee's *Ex Parte* Motion for Order to Show Cause ("Decl.") filed herewith, which includes exhibits supporting each fact.

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

14. A continuation statement was not filed. Therefore, after its 5-year term, the UCC-1 lapsed on December 22, 2010.

15. After substantial litigation between the Debtor and Gisler over several years, Gisler acquired a civil declaratory judgment (subject to appeal) against the Debtor in Deschutes County Circuit Court on October 29, 2010 (the "Judgment") in *Gem Tumalo LLC v. Patrick M. Gisler*, Case No. 08-CV-0899MA (the "State Court Action"). The Judgment purportedly forecloses Gisler's security interest in the Collateral.

16. The Judgment simply confirmed the arbitrator's award that was based on a default of the Debtor, after the Debtor's counsel withdrew from the case and the Debtor failed to present its case. The Debtor subsequently filed a Notice of Appeal of the Judgment.

17. Based on Gisler's bankruptcy filing, the Gisler Estate stepped into Gisler's shoes in the state court proceeding, and the State Court Action caption was changed to *Gem Tumalo LLC v. Michael B. Batlan as Trustee for the Bankruptcy Estate of Patrick M. Gisler*. Gisler is no longer a party in the State Court Action.

18. Defendant PWPF offered to purchase from the Gisler Estate all rights and interest in the Judgment pending appeal, as well as the Security Agreement. A Notice of Intent to Sell Property at Private Sale "as is, where is, and with no warranties or representations" (the "Notice of Sale") was issued by the trustee for the Gisler Estate on December 30, 2010 (Docket # 445 in the Gisler Case). No objections or further bids were received in response to the Notice of Sale

19. On January 26, 2011 (nearly a week after the Debtor filed the above-captioned bankruptcy case on January 21, 2011), PWPF executed and returned to the Gisler Estate the Sale and Assignment Agreement (the "Assignment Agreement"), which included notice of the Debtor's (*i.e.*, the judgment debtor's) bankruptcy case, as well as the pending appeal of the Judgment.

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

20. Pursuant to the Assignment Agreement from the Gisler Estate, PWPF currently holds all rights and interest under the Judgment and the Security Agreement.

**BACKGROUND OF THE DEBTOR AND THE REAL PROPERTY**

21. The Debtor was a nursery and landscaping business and its assets consist primarily of equipment and nursery stock. At the time of filing, the Debtor's assets were located at the previously described Real Property, which was the Debtor's principal place of business.

22. At the time of filing, West Coast Bank owned the Real Property, as the result of a foreclosure sale arising under West Coast Bank's deed of trust.

23. At the time of filing, the Debtor's principal, Gregg Miller, resided in a personal residence on the Real Property with his wife, Maryanne Miller, and served as custodian of the the Debtor's assets, which remained on the Real Property pursuant to an agreement with West Coast Bank.

24. The Debtor's assets include certain equipment that was previously appraised for the Gisler Estate in late 2010. The appraised equipment included the following:

- Skid Steer 963 Bobcat – 2901.0 hours (S/N 56221149);
- 2 Sets of Grouser Track (1475 3C Grouser; 160 D Grouser);
- Care Tree 46-16 Ball Handler – one pair (S/N 12298);
- Care Tree Model 748 Tree spade (S/N 98557);
- Care Tree Counterweights and Outriggers;
- Bobcat Forks 48" (S/N 6713658);
- 78" Bobcat Bucket (S/N 6709974);
- 87" Bobcat Bucket (S/N unknown);
- Bobcat 14x175 spare tire;
- Hansen SSB4205 Snow Blower (S/N 12298); and

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

- 1998 Towmaster Equipment trailer (VIN # 4KTNFT1926WL161348).

In addition, the Debtor owns other nursery equipment and tools, and a substantial amount of nursery stock inventory (some of which is subject to claims of third parties).

**POST-PETITION ACTIVITY BY DEFENDANTS**

25. According to reports from attorneys for the Debtor and for Mr. Miller, an unknown party entered the Real Property during the night of January 27, 2011 (one week after the Debtor filed its bankruptcy case) and, without authorization, removed certain landscaping equipment owned by the Debtor – specifically a Big Tex Trailer, a 963 BobCat and a Care Tree Outrigger. A true and correct copy of correspondence from the Debtor's counsel to the Trustee and her counsel, dated February 8, 2011 at 2:49 pm (the "Mathers Email"), is attached to the Declaration of Amy Mitchell filed herewith.

26. According to the Mathers Email, the Debtor's principal Mr. Miller believes that Gisler or his agents (including PWPF) took the property because Gisler and PWPF were the only other interested parties who knew of the assets, and because PWPF had just purchased the Judgment the day before.

27. No one obtained authorization from the Millers, West Coast Bank, the Trustee, or the Debtor to enter the property or remove the Debtor's assets.

28. The Trustee or her counsel have not been contacted by any of the defendants or their counsel as of the date of this Complaint.

29. On Wednesday, February 2, 2011, Gisler and/or his counsel appeared *ex parte* in the State Court Action and, based on representations made to Judge A. Michael Alder ("Judge Adler") of the Deschutes County Circuit Court, obtained a Writ of Execution of Judgment of Restitution in the State Court Action, for eviction for possession of the Real Property (the "Writ of Execution").

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

30. Neither the Debtor (the only other party in the State Court Action) nor the Millers or the Trustee (or their respective counsel) were given notice of Gisler's *ex parte* appearance in the State Court Action, or of the court's issuance of the Writ of Execution.

31. On Friday, February 4, 2011, based on the Writ of Execution entered in the Debtor's case, the Deschutes County Sheriff evicted the Millers from the real property. The Mathers Email includes an email from Mr. Miller, principal of the Debtor, dated February 6, 2011, that describes the disturbing events in detail. The relevant portion is as follows (with nonsubstantive spelling and capitalization edits):

> On Friday evening my wife and I arrived home from work. We were extremely alarmed to find eviction notices posted on our front door. They were from Pat Gisler as landlord and Gregg and Mary Ann Miller as tenants. All of our locks had been changed and our house had been entered. We immediately called Michael Peterkin [the Millers' attorney] to inform him of this and to find out what to do.
>
> (We believe Patrick Gisler acquired the eviction order by falsifying information to Judge Adler). He started the eviction early in the week (2-2-11) and Judge Adler agreed to it because of the information that was given to him. West Coast Bank owned the property when he started this and still is in title to it as I am writing this letter. Also [the Debtor] Gemtumalo LLC is who did have the lease with Patrick Gisler not Gregg and Mary Ann Miller.
>
> West Coast Bank foreclosed on Pat Gisler in October of 2110, he has not been the owner of record since that point. Michael Peterkin could not believe that Gisler did what he did. He then called the Deschutes County Sheriff's office and explained what Gisler had done and they sent a deputy right out. The deputy was told what happened and he said it was alright to re-enter our house (He reviewed all the documents prior to telling us that). We paid a locksmith to come out and install all new locks in the house.
>
> At this point it is 11 pm!! We go into our house and prepare to go to bed. To our alarm the sheriff's shows back up at 12 midnight and demands we leave the property immediately or be arrested. We had no choice but to agree to do that. We left with no place to go at 1:30 am. Since that point Gisler has had someone staying in our house, doing some sort of construction inside and burning brush piles in the fields outdoors. All of our expensive furniture and other personal belongings are inside, all of [the Debtor] Gemtumalo LLC's assets are all outside, with no protection from

> him doing whatever he wants to with them.
>
> Pat Gisler has absolutely no respect for the law and continues to demonstrate it with his outrages actions. This is exactly what he did when he removed [the Debtor] Gemtumalo LLC's equipment two weeks ago.

Mathers Email, at 2-3, attached to the Mitchell Declaration as Exhibit N.

32. An Eviction Trespass Notice was issued by the Sheriff and posted on the Real Property on Friday, February 4, 2011. The Eviction Trespass Notice indicates that all personal property present on the Real Property (including the Debtor's assets) "is in the possession of the landlord and may be redeemed by contacting the landlord: Patrick M. Gisler, PO Box 7, Bend, OR 97701. (541) 408-3119."

33. On Monday, February 7, 2011, an *Ex Parte* Motion to Abate Writ of Execution of Judgment of Restitution was submitted to Judge Adler in the State Court Action, along with a Declaration of Gregg Miller.

34. The Declaration of Gregg Miller dated February 7, 2011 states, *inter alia*, that the Millers are not parties or judgment debtors regarding the Judgment; Gisler is not the landlord nor did he have any ownership interest in the Real Property; the Millers are lawfully in possession of the Real Property, which is owned by West Coast Bank; and Gisler and his agents were currently and continuously trespassing as of that time.

35. On the same day (Monday, February 7, 2011), Judge Adler signed an Order to Abate Writ of Execution of Judgment of Restitution (the "Abatement Order"), vacating the Writ of Execution *nunc pro tunc* and ordering that the quiet enjoyment of the Real Property not be disturbed by any person or party without further order of the Court.

36. Gisler, along with Madison and the Coles, were occupying the Real Property when the Abatement Order was delivered on Monday, February 7, 2011, and refused to leave the Real Property.

37. On Tuesday morning (February 8, 2011), Judge Adler signed a Supplemental Judgment on Order to Abate ("Supplemental Judgment"), immediately restoring and granting possession of the Real Property to the Millers; that the quiet enjoyment of the Millers shall not be disturbed without further order of the Court; and that plaintiff (technically the Debtor) shall have the right to submit an application for attorney fees and costs. In addition, Judge Adler signed a Writ of Execution of Supplemental Judgment, instructing the sheriff to enforce and serve the writ on Gisler, the Coles, and Madison and any others occupying of the Real Property.

38. The Millers have reoccupied the Real Property. During the occupancy by Gisler, the Coles, and Madison, their residence was "trashed," and personal property of the Millers, including a shotgun and Schedule 3 prescriptions, were allegedly taken.

39. Assets of the estate may have been removed or damaged during the occupancy of the Real Property by Gisler, the Coles, and Madison.

40. The Coles and Madison were in the process of purchasing the Real Property from West Coast Bank during the time they evicted the Millers and the Debtor and were wrongfully occupying the Real Property. The Coles and Madison signed the offer on January 28, 2011, and they signed West Coast Bank's counter-offer on February 2, 2011.

41. Based on the pending sale negotiations, the Coles and Madison must have understood that West Coast Bank owned the Real Property during the time that they were occupying the Real Property (based on an unlawfully obtained Writ of Execution).

42. On February 8, 2011, a Statutory Bargain and Sale Deed from West Coast Bank to the Coles and Madison was recorded in the Deschutes County Official Records, Instrument No. 2011-05157.

43. As of February 8, 2011, the Coles and Madison now own the Real Property where the Debtor's assets are located.

44. Although none of the defendants were creditors when the Debtor filed its bankruptcy case, all defendants received notice of the Debtor's bankruptcy case through the following means (and possibly others):

a. PWPF had actual notice of the Debtor's bankruptcy by way of the Assignment Agreement;

b. Gisler himself sought to enforce the assigned Judgment in the State Court Action either as transferee of the Judgment or as agent of PWPF, therefore Gisler had constructive (if not actual) notice of the Debtor's bankruptcy case based on the Assignment Agreement;

c. Gisler, the Coles, and Madison received notice of the bankruptcy by way of the documents filed in the State Court Action;

d. The Coles and Madison received notice of the bankruptcy from West Coast Bank during the sale negotiation;

e. The Coles and Madison also presumably received notice of the bankruptcy from Gisler when they occupied the Real Property with Gisler.

45. Gisler is currently a bankruptcy debtor himself. Numerous motions for stay relief were filed in his bankruptcy case. Gisler should be aware of the effect and importance of the automatic stay.

46. Because they received notice of the bankruptcy, Gisler and PWPF have intentionally disregarded the automatic stay by attempting to enforce the Judgment against the Debtor and by seeking a Writ of Execution in the Debtor's State Court Action despite awareness of the Debtor's bankruptcy.

47. Gisler and/or PWPF intentionally disregarded the automatic stay by trespassing on the Real Property and removing the Debtor's assets despite awareness of the Debtor's bankruptcy.



BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

48. Gisler, PWPF, the Coles, and Madison intentionally disregarded the automatic stay by misleading the State Court and based on the groundless Writ of Execution, removing the Millers from the Real Property (the custodians of the Debtor's assets) by abuse of process, and occupying the Real Property and interfering with the Debtor's possession, despite their awareness of the bankruptcy.

49. Because they were negotiating with West Coast Bank to purchase the Real Property, the Coles and Madison must have understood during their occupancy of the Real Property that the Real Property was owned by West Coast Bank and that Gisler did not have any legitimate interest in the Real Property.

50. Based on the foregoing facts, Gisler, PWPF, the Coles, and Madison are likely to continue to intentionally disregard the automatic stay if the Court does not (1) enjoin (a) further removal of the Debtor's assets and (b) interference with the Debtor's assets located at the Real Property without an order of this Court; and (2) impose sanctions against Gisler, PWPF, the Coles, and Madison for intentional and continued violations of the automatic stay.

## FIRST CLAIM FOR RELIEF

### Avoidance of Lien in Estate Property Under 11 U.S.C. §§ 544(a)(1) and 550

### (Gisler and PWPF)

51. The Trustee restates and incorporates the allegations of paragraphs 1 through 50 above.

52. The Gisler Estate's rights in the Security Agreement and the Judgment were sold to PWPF subject to the Assignment Agreement. The assignment took place after the Petition Date. Since then, Gisler has taken actions to enforce the Security Agreement and the Judgment either as agent for PWPF or as a subsequent assignee of PWPF's rights.

53. To the extent that PWPF or Gisler have a security interest in the Collateral, such security interest is unperfected because the UCC-1 had lapsed. *See* ORS 79.0515(3).

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

54. To the extent that PWPF or Gisler claim an interest in the Debtor's assets pursuant to the Judgment, such interest is not perfected because there was no levy upon the Judgment before the Petition Date. *See* ORS 18.878(2) (perfection occurs upon levy). For the same reason, PWPF or Gisler would not be a "lien creditor" under the Uniform Commercial Code ("UCC"). See ORS 79.0102(yy)(A) (defining "lien creditor" as a creditor that has acquired a judgment lien on personal property by attachment or levy).

55. Pursuant to 11 U.S.C. § 544(a)(1), the Trustee steps into the shoes of a hypothetical judgment lien creditor that extends credit to the debtor at the time of filing, and, at that moment, obtains a judicial lien on all property. Furthermore, the Trustee is defined as a "lien creditor" under the UCC, and therefore trumps holders of unperfected security interests. *See* ORS 79.0102(yy)(C) (defining "lien creditor" as a creditor that has acquired a judicial lien on personal property by attachment or levy); 79.0317(1) (priority of lien creditor over holder of unperfected security interest).

56. Therefore, pursuant to 11 U.S.C. §§ 544(a)(1) and 550, the Trustee is entitled to a judgment avoiding any interest of PWPF and/or Gisler in the Collateral (or any other assets of the Debtor) that arise under the unperfected Security Agreement or Judgment.

## SECOND CLAIM FOR RELIEF

### Turnover of Estate Property Under 11 U.S.C. § 542(a)

### (Gisler and PWPF)

57. The Trustee restates and incorporates the allegations of paragraphs 1 through 56 above.

58. Upon information and belief, Gisler, PWPF, and/or their respective agents have property of the estate in their possession, including but not limited to a Bobcat tractor, a trailer, and other landscaping equipment.

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

59. The Trustee is entitled to a judgment, pursuant to 11 U.S.C. § 542(a), that all of the Debtor's property in the possession of Gisler, PWPF, and/or their respective agents, or the value of such property, must be turned over to the Trustee for proper administration of the estate.

## THIRD CLAIM FOR RELIEF

### Temporary Restraining Order and Preliminary Injunction Under Fed. R. Bankr. P. 7065 and Or. R. Civ. P. 81-83 Applicable per Fed. R. Bankr. P. 7064

### (Gisler, PWPF, the Coles, and Madison)

60. The Trustee restates and incorporates the allegations of paragraphs 1 through 59 above.

61. Pursuant to 11 U.S.C. § 541, all legal and equitable interests of and in the Debtor's property as of the Petition Date (with the exception of certain limited statutory exemptions) became property of the bankruptcy estate.

62. The Trustee's statutory duties under the Bankruptcy Code include accounting for, collecting, and reducing to money the property of the estate and investigating the Debtor's financial affairs pursuant to 11 U.S.C. § 704.

63. Provisional state law remedies providing for the seizure of property are made applicable pursuant to Fed. R. Bankr. P. 7064, which states that Fed. R. Civ. P. 64 applies in adversary proceedings.

64. Fed. R. Civ. P. 64(a) states that every remedy of provisional process available in Oregon is available to the federal courts, and Or. R. Civ. P. 83 provides that a court may grant immediate *ex parte* relief in situations such as this one:

> **D. Issuance of provisional process where damage to property threatened.** Subject to section B of this rule, if the court finds that *before hearing on a show cause order* the defendant or other person in possession or control of the claimed property is engaging in, or is about to engage in, conduct which would place the claimed property in *danger of destruction, serious harm, concealment, removal from this state, or transfer to an innocent*

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

> *purchaser* or that the defendant or other person in possession or control of the claimed property would not comply with a temporary restraining order, and if Rule 82A has been complied with, *the court shall order issuance of provisional process in property which probably would be the subject of such destruction, harm, concealment, removal, transfer, or violation.* Where real property is subject to provisional process as provided by this section, the plaintiff shall have recorded in the County Clerk Lien Record a certified copy of that order.

ORCP 83D (emphasis added).

65. Alternatively or in addition, Fed. R. Civ. P. 65, made applicable by Fed. R. Bankr. P. 7065, provides that this Court may issue temporary restraining orders without notice if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition…" FRCP 65(1)(A).

66. The personal property of the bankruptcy estate is, by its nature, easily transferred, hidden, or destroyed, and the Debtor will likely lose possession and control of the personal property upon the imminent eviction of the Millers and the Debtor from the Real Property.

67. The Trustee has cause to believe that a temporary restraining order against the Defendants should be issued immediately because the estate's assets are in danger of irreparable injury, loss, or damage based on, *inter alia*, the overnight disappearance of equipment the day after the Judgment was assigned, the defendants' ignorance of the bankruptcy stay when enforcing its Judgment, and the defendants' disregard of the rights of the occupants of the Real Property when the evicting defendants lacked any interest in the Real Property.

68. The Trustee is entitled to injunctive relief to ensure that the automatic stay is respected and the assets of the estate are protected from further acts of the defendants until the Trustee has the opportunity to administer the assets, or until further relief can be sought from this Court by the Trustee or by the defendants.

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

## FOURTH CLAIM FOR RELIEF

### Civil Sanctions for Violation of the Automatic Stay Under 11 U.S.C. § 105(a)

### (Gisler, PWPF, the Coles, and Madison)

69. The Trustee restates and incorporates the allegations of paragraphs 1 through 68 above.

70. Pursuant to 11 U.S.C. § 105(a) and in addition to 11 U.S.C. § 362(k) remedies for individuals, this Court has the power to award to non-individuals civil contempt sanctions for violations of the automatic stay.

71. Because on the egregious facts of this case, and the willful conduct of the defendants as alleged herein, sanctions are justified and the Trustee is entitled to recover compensatory and punitive damages, as well as her attorney fees and costs, for the benefit of the estate. In addition, any claim made by the defendants should be equitably subordinated to the other creditors.

**WHEREFORE**, the Trustee requests judgment against the defendants as follows:

A. for **Claim 1**, pursuant to 11 U.S.C. § 544(a)(1), avoiding the security interests, if any, of PWPF and/or Gisler in the Collateral or any other assets of the estate by way of the Security Agreement or the Judgment;

B. for **Claim 2**, pursuant to 11 U.S.C. § 542(a), directing and ordering that Gisler, PWPF, and/or their respective agents turn over any and all of the Debtor's property in their possession to the Trustee, or awarding the Trustee a money judgment against Gisler and PWPF in the amount of the value of such property; and awarding attorney fees and costs of suit and provisional process;

C. for **Claim 3**, pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 7064 and 7065, granting injunctive relief to ensure that the automatic stay is respected and the assets of the estate are protected from further acts of the defendants until the

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Trustee has the opportunity to administer the assets, or until further relief can be sought from this Court by the Trustee or by the defendants;

D. for **Claim 4**, pursuant to 11 U.S.C. § 105(a), awarding civil contempt sanctions against each defendant for their respective willful violations of the automatic stay, including compensatory and punitive damages, attorney fees and costs, and equitable subordination of the defendants' claims, if any, against the bankruptcy estate; and

E. awarding the Trustee such other legal and equitable relief as may be just and proper.

DATED this 11th day of February, 2011.

Respectfully submitted,

By: /s/ Justin D. Leonard

Justin D. Leonard, OSB No. 033736
jleonard@balljanik.com (email)
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, OR 97204
(503) 228-2525 (phone)
direct fax 503-226-3910 (fax)

Attorneys for Amy Mitchell, Trustee

## CERTIFICATE OF SERVICE

I hereby certify that I served copies of the foregoing **COMPLAINT** on the following parties via **email or CM/ECF**:

- JUSTIN D LEONARD jleonard@bjllp.com, jweisenbach@balljanik.com
- ANDREW S MATHERS andrew@andrewsmatherspc.com
- Amy E Mitchell mitchelltrustee@comcast.net, amitchell@ecf.epiqsystems.com
- US Trustee, Portland USTPRegion18.PL.ECF@usdoj.gov

and by **mailing** a full, true and correct copy in a sealed first-class postage prepaid envelope, addressed to the parties listed below, and deposited with the United States Postal Service at Portland, Oregon:

- (No manual recipients)

DATED: February 11, 2011

/s/ Justin D. Leonard
Justin D. Leonard, OSB #033736

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525